UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MELVIN A. GLOVER,

          Plaintiff,

vs.                                                        Case No. 3:10-cv-971-J-34MCR

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

**I.**     **PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on August 28, 2006, alleging a period of disability beginning September 23, 2005. (Tr. 27). The Social Security Administration denied this application initially and on reconsideration. (Tr. 10, 47-53). After a hearing, an Administrative Law Judge (the "ALJ") issued a decision on November 6, 2008, denying Plaintiff's application. (Tr. 24, 38). The Appeals Council denied Plaintiff's request for review on August 6, 2010 (Tr. 4, 22), rendering the ALJ's

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15).

decision final.  See 20 C.F.R. § 404.981.  Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision.  (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Summary of Evidence Before the ALJ

Plaintiff was thirty-eight years old on the date of the ALJ's decision.  (Tr. 24, 35, 44-45, 134).  Plaintiff has a limited education and past relevant work experience as a garbage truck driver, maintenance worker, and food supervisor.  (Tr. 35, 45, 149-53, 164, 169, 267, 270, 271).  Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

On September 23, 2005, Plaintiff presented to St. Vincent's Medical Center with complaints of back and right leg pain following a motor vehicle accident.  (Tr. 558).  A lumbar MRI dated September 26, 2005 was unremarkable.  (Tr. 286, 304).  Plaintiff completed a course of physical therapy and medication treatment on February 6, 2006.  (Tr. 307).  Thereafter, Dr. Zehra A. Cumber, D.O. completed a report describing soft tissue complaints' with intermittent numbness or tingling in the upper right extremity and neck pain.  Dr. Cumber noted that Plaintiff's low back pain was increased with prolonged sitting or standing, twisting or bending activities, and his sleep was interrupted with pain.  Plaintiff was diagnosed with post-traumatic depression.  (Tr. 303-06, 482).

Plaintiff sought treatment at Shands Jacksonville for headaches.  (Tr. 328, 339, 487).  Dr. Walter Ray, M.D., a neurologist, opined Plaintiff was incapacitated by headaches and other symptoms and is limited to sedentary work.  (Tr. 331, 436-37).

On March 20, 2006, Dr. Carlos A. Arce, M.D., diagnosed Plaintiff with a pituitary lesion, small ophthalmic artery aneurysm, and a history of headaches. (Tr. 328-29). He opined that Plaintiff was capable of performing medium work. (Tr. 561).

On January 3, 2007, Plaintiff presented to Dr. Charles Day, M.D. (Tr. 46-66). On March 21, 2007, Dr. Day opined that Plaintiff's weekly headaches, photophobia, and pain on motion were migraine in nature. (Tr. 428-31). On April 4, 2007, Plaintiff continued to complain to Dr. Day of chronic low back pain. (Tr. 467-68).

At the request of the Commissioner, Plaintiff was evaluated for a second time by Dr. Peter Knox, Psy.D., on June 13, 2007.[2] Dr. Knox's Axis 1 diagnosis included a Pain Disorder with Depressed Mood and a Dysthymic Disorder. Dr. Knox's Axis V diagnosis reflected a worsening from a global assessment of functioning perspective ("GAF").[3] (Tr. 391, 487).

An August 29, 2007 ambulatory EEG evidenced normal results. (Tr. 537). Plaintiff continued to see Dr. Day for complaints of headache, convulsions, sinusitis, asthma, and lumbago on August 8, 2007, October 12, 2007, and November 13, 2007. (Tr. 509, 510, 511-514).

On October 25, 2007, Dr. Ray opined that Plaintiff could sit less than 1 hour (in an 8 hour day), stand and or walk less than 1 hour (in an 8 hour day) and that he would

---

[2]Plaintiff was first evaluated by Dr. Knox on January 15, 2007. Dr. Knox's first report only included a clinical evaluation; however, specific psychological testing was not conducted. (Tr. 387-94).

[3]The June 2007 GAF score was 5 points lower than the January 2007 estimation, down to 55. (Tr. 391, 487).

not be able to use his right lower extremity in repetitive foot control movements. (Tr. 521). Plaintiff was also limited to occasionally lifting 0 to 5 pounds. (Tr. 522).

Plaintiff was seen by Dr. Harold Laski, M.D. in May 2008 for continued lower back pain. (Tr. 595, 596). In an unsigned and undated document, Dr. Laski appears to opine that Plaintiff's pain would prevent him from sustaining work-related activities on a full time or regular and continuing basis. (Tr. 603-05).

### B. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. §

404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 23, 2005, the alleged onset date.  (Tr. 29). At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine, pituitary tumor with secondary visual disturbance, asthma, and headaches.  (Tr. 29-30).  At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4.  (Tr. 30-31).  At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[4] to perform a limited range of light work.[5]  Specifically,

> [Plaintiff] can only occasionally reach overhead with his upper extremities, look up or down with his neck in a fixed position, crouch, crawl, kneel, stoop, balance, and climb ramps or stairs, and can never climb ladders, rope, or scaffolds.  He cannot operate foot control repetitively with his right foot. [Plaintiff] cannot work in environments were [sic]

---

[4] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations.  20 C.F.R. §§ 404.1545, 416.945.  The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation.  Id.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

> he would be exposed to frequent load noises, vibrations, concentrated levels of pulmonary irritants, or dangerous work hazards. He cannot be required to drive during the work day or perform fine precision visual tasks such as small parts assembly.

(Tr. 31-34). In reaching Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting factors of his alleged symptoms not completely credible. (Tr. 34).

At the hearing, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypothetical questions posed, the VE testified Plaintiff's past relevant work exceeded the ability of his RFC. (Tr. 35). However, the VE stated that a person with Plaintiff's RFC could perform other jobs, such as a counter clerk, route clerk, or parking lot cashier. (Tr. 35-36). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 36).

### III.   ANALYSIS

#### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff presents three issues on appeal: (1) whether the ALJ properly considered all of Plaintiff's impairments at step two of the sequential evaluation process (Doc. 21, pp. 13-15); (2) whether the ALJ adequately evaluated the medical opinions of record (Id. at pp. 15-18); and (3) whether the ALJ's credibility analysis is consistent with the evidence of record (Id. at pp. 18-20). The Court will address each of these issues.

### 1. Whether the ALJ properly considered all of Plaintiff's impairments at step two of the sequential evaluation process.

At step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine, pituitary tumor with secondary visual disturbance, asthma, and

headaches. (Tr. 29). Plaintiff contends that the ALJ should have found that he suffered from additional severe impairments, including hydrocephalus, pain disorder-post traumatic depression, elevated blood pressure, obesity, and medication side effects. (Doc. 21, pp. 13-15). In response, the Commissioner argues that Plaintiff failed to prove that his alleged impairments - alone or in combination, by whatever name of diagnosis, severe or not severe - caused additional limitations of Plaintiff's ability to work. (Doc. 22, pp. 3-9).

  As abovementioned, at step two of the sequential evaluation process, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar and cervical spine, pituitary tumor with secondary visual disturbance, asthma, and headaches. (Tr. 29). Thus, the ALJ found in Plaintiff's favor at step two and proceeded with the other steps of the sequential evaluation process, finding that Plaintiff could perform a reduced range of light work and the jobs identified by the VE. (Tr. 30-36). Although Plaintiff contends the ALJ should have found that he had other severe impairments, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," provided the ALJ considers the claimant's impairments in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010). Here, the ALJ properly considered all of Plaintiff's relevant impairments and found that Plaintiff did not have an "impairment or combination of impairments" that met or equaled a listed impairment, which is sufficient to show that the ALJ considered the combined effect of Plaintiff's impairments. See (Tr. 29-34); see

also Hutchinson v. Astrue, 408 F. App'x 324, 327 (11th Cir. 2011); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).

Additionally, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires." Heatly, 382 F. App'x at 824-25. The relevant question is the extent to which Plaintiff's impairments, by whatever name or diagnosis, limited his ability to work. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Although Plaintiff claims that the ALJ failed to adequately address his alleged hydrocephalus, pain disorder-post traumatic depression, elevated blood pressure, obesity, and medication side effects, he failed to offer any evidence of those conditions or how they effect Plaintiff's ability to work. See (Doc. 21, pp. 13-15); see also Outlaw v. Barnhart, 197 F. App'x 825, 828 n. 3 (11th Cir. 2006) (noting claimant waived issue because he did not elaborate on it or provide citation to authority); N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). Additionally, the ALJ was not required to discuss those conditions which Plaintiff failed to raise as an issue. See Robinson v. Astrue, 365 F. App'x 993, 995 (11th Cir. 2010) (holding the ALJ was not required to discuss claimant's diagnosis of chronic fatigue syndrome when claimant had not alleged she was disabled due to the condition either when she had filed her claim or at her hearing); Street v. Barnhart, 133 F. App'x 621, 627 (11th Cir. 2005) (noting "it has been persuasively held that an '[ALJ] is under no obligation to investigate

a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'").

Plaintiff bears the initial burden of demonstrating that his impairments are "severe." See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). An impairment or combination of impairments is not "severe" if it does not significantly limit an individual's ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 404.1521(a) (a severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities); 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii) (to satisfy the severity requirement of step two of the sequential evaluation process, the claimant's impairment(s) also must be severe for at least twelve consecutive months). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Similarly, an impairment is not "severe" if it is a slight abnormality which would have no more than a minimal effect on Plaintiff's abilities to perform basic work activities. See SSR 85-28.

Plaintiff failed to meet his burden of proving his alleged hydrocephalus, pain disorder-post traumatic depression, elevated blood pressure, obesity, and medication side effects were severe impairments, particularly for any consecutive twelve-month period. Merely because Plaintiff may have suffered from these conditions does not establish that he had a severe impairment or additional limitations due to any of these conditions. See 20 C.F.R. § 404.1520(c); see also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the

severity of the condition."). Moreover, even if any of these conditions could be considered severe impairments, adding one or more of them to the ALJ's step two finding would serve no practical purpose because Plaintiff failed to show that any of these conditions or his condition in general imposed work-related limitations that the ALJ did not include in her RFC finding. See Heatly, 382 F. App'x at 824-25; Moore, 405 F.3d at 1213 n.6.

### 2. Whether the ALJ adequately evaluated the medical opinions of record.

Plaintiff contends that the ALJ failed to adequately evaluate the medical evidence in her assessment of Plaintiff's functional capacity. (Doc. 21, pp. 16-18). In response, the Commissioner argues that the medical records provide substantial evidence to support the ALJ's assessment of Plaintiff's RFC. (Doc. 22, pp. 9-13).

Plaintiff first contends that the ALJ overlooked Dr. Cumber's reference to his increasing low back pain with prolonged sitting, standing, twisting, bending activities, interrupted sleep, and post-traumatic depression. (Doc. 21, p. 16). However, it appears these references were actually a recitation of Plaintiff's subjective complaints and not Dr. Cumber's conclusions. See (Tr. 305-06). Indeed, Dr. Cumber's treatment notes support the ALJ's finding that Plaintiff could perform a reduced range of light work. See (Tr. 31, 32, 34, 301-16).

Similarly, Plaintiff claims that the ALJ failed to adequately consider the records from Dr. Ray, which indicate Plaintiff is limited to sedentary work. (Doc. 21, p. 16). However, Dr. Ray's treatment notes do not provide evidence that Plaintiff's condition was of disabling severity for at least twelve consecutive months. See (Tr. 331-32,

428-32).  Additionally, Dr. Ray's conclusion is not supported by the medical evidence.  See (Tr. 328-32, 351-59, 422-26, 428-32, 526-47, 552-73, 586-92).

Substantial evidence also supports the ALJ's decision to give little weight to the opinion of Dr. Laski.  See (Tr. 32-33, 34, 603-05).  The weight accorded a doctor's opinion depends on the doctor's examining and treating relationship with the claimant, the evidence the doctor presents to support his or her opinion, how consistent the opinion is with the record as a whole, the doctor's specialty, and other factors.  See 20 C.F.R. § 404.1527(d).  Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting a treating doctor's opinion.  See 20 C.F.R. § 404.1527(d)(2).  An ALJ, however, may discount a doctor's opinion, including a treating doctor's opinion, when the doctor fails to provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole.  See 20 C.F.R. § 404.1527(d).  In addition, although doctors' opinions about what a claimant can still do are relevant evidence, such opinions are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC.  See 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527, 404.1545, 404.1546(c).

Here, the ALJ did not give Dr. Laski's opinion controlling weight because it was not signed or dated, meaning the ALJ could not determine if Dr. Laski actually completed the form.  (Tr. 32-33, 603-05).  Plaintiff contends the ALJ "overlooked the fact that Dr. Laski's signature is substantiated by a fax dated verification (of June 23, 2009)."  (Doc. 21, p. 17).  However, Plaintiff cites no authority that such a verification establishes that Dr. Laski signed the opinion.  In any event, the ALJ further found that Dr. Laski's

opinion was not entitled to significant weight because he did not provide sufficient explanation for his opinion.  See (Tr. 33); see also 20 C.F.R. § 404.1527(d)(2), (d)(3). Indeed, Dr. Laski failed to specify evidence which supported his opinion, and his medical records do not include significant objective medical findings that would support the limitations he imposed.  See (Tr. 33, 34, 603-05, 612- 16).  Additionally, as noted by the ALJ, Dr. Laski reported that Plaintiff functioned well while taking medication and functioned independently, "ambulating, shopping, and performing the normal activities of daily life."  (Tr. 33, 612-16).  Thus, substantial evidence supports the ALJ's decision to give little weight to the opinion attributed to Dr. Laski.

### 3. Whether the ALJ's credibility analysis is consistent with the evidence of record.

Plaintiff contends that the ALJ failed to properly consider Plaintiff's subjective complaints of pain.  (Doc. 21, pp. 18-20).  In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his alleged pain and other symptoms were not credible.  (Doc. 22, pp. 13-16).

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th

Cir. 1991).[6]  "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561.[7] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Foote, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate

---

[6]"Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity."  SSR 88-13.

[7] Social Security Ruling 96-7p, provides:

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

explicit and adequate reasons for doing so." Id. at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Id. at 1562. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Id. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. Id. If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. Foote, 67 F.3d at 1561; 20 C.F.R. § 404.1529.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms. (Tr. 34). Thus, the ALJ found that Plaintiff's impairments satisfied the pain standard. Holt, 921 F.2d at 1223. The ALJ also determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence of record and could not be fully credited to the extent they conflicted with the ALJ's RFC finding. (Tr. 16). Thus, the ALJ made a specific credibility finding that Plaintiff's subjective statements were not entirely credible. Foote, 67 F.3d at 1561. The issue for the Court

to determine is whether the ALJ's credibility finding is supported by substantial evidence.

In determining credibility, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. In the instant case, the Court finds the objective medical evidence and medical opinions of record provide substantial evidence to support the ALJ's credibility finding. See 20 C.F.R. § 404.1529(c).

Here, as discussed by the ALJ, the medical records undermine Plaintiff's allegations and provide substantial evidence to support the ALJ's credibility finding. (Tr. 29-34). For example, diagnostic studies conducted on Plaintiff including x-rays, MRI scans, and CT scans were unremarkable. See (Tr. 281-82, 285-95, 302, 304, 307, 311, 313, 329-31, 353-59, 422-24, 426, 428, 430-31, 511, 513, 517-20, 537-40, 542, 552, 554-55, 558-59, 572-73, 580, 586, 589-90). Additionally, physical examinations revealed some abnormalities in the months following the automobile accident occurring on September 23, 2005, but the objective findings as a whole do not indicate Plaintiff's condition was as limiting as he claimed. See (Tr. 280-81, 303-07, 309-11, 314, 328, 331, 365-68, 379-84, 428, 431-32, 465-68, 509-14, 528-29, 532, 540-42, 549-50, 552-53, 556-65, 576-83, 586, 591-92, 595, 598-601, 608-16).

Plaintiff contends that the ALJ took his statement that he was no longer able to

walk or jog two miles at a time out of context, arguing the ALJ believed he was able to walk or jog two miles at a time. (Docs. 21, pp. 18-19). However, it appears the ALJ merely concluded Plaintiff's statement meant that after September 2005, he could no longer perform excessive walking, such as walking or jogging two miles at one time. (Tr. 33).

Plaintiff also contends that the ALJ erred in referencing Dr. Laski's notations that he functioned well while taking his medication, arguing Dr. Laski's notations only reflected he was doing well in the context of his treatment. (Doc. 21, p. 19). However, Dr. Laski's observations that Plaintiff functioned independently, "ambulating, shopping, and performing the normal activities of daily life" contradict Plaintiff's interpretation of Dr. Laski's notations. (Tr. 614, 615). Plaintiff further contends that Dr. Laski's notations were computer-generated "boilerplate language" used to comply with Florida laws and regulations. (Doc. 21, pp. 19-20). This argument is nonsensical and lacks merit.[8]

Plaintiff failed to meet his burden of providing sufficient evidence to support his allegations of disabling pain and other symptoms. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a), (c). The ALJ properly considered the relevant evidence and performed her duty as the trier of fact of weighing and resolving any conflicts in the evidence. See Moore, 405 F.3d at 1213. Therefore, the Court finds that substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act. See Foote v. Chater, 67

---

[8]In support of his argument, Plaintiff cites a Florida law dated June 2011, well after Dr. Laski's notations in 2008. (Tr. 612-16).

-17-

F.3d 1553, 1662 (11th Cir. 1995) (an ALJ's clearly articulated credibility finding will not be disturbed when supported by substantial evidence).

## IV.   CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  11th  day of January, 2012.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record